IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KENNETH JENKINS,

    Plaintiff,

Cv-

v.                                                      Civ. No: 19-656 JAP/JHR

CITY OF LAS VEGAS, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On May 26, 2020, Defendants City of Las Vegas, Richard Trujillo, Tonita Gurule-Giron, and Anne Marie Gallegos filed a MOTION FOR SANCTIONS ("Motion") (Doc. 44). On June 5, 2020, Plaintiff Kenneth Jenkins filed a RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS; AND COUNTER-MOTION FOR SANCTIONS AND ATTORNEY'S FEES ("Counter-Motion") (Doc. 48). Both the Motion and Counter-Motion are fully briefed.[1] The Court will deny the Motion and Counter-Motion as described herein.

### BACKGROUND

The underlying dispute arose out of Plaintiff's employment with the City of Las Vegas, New Mexico. The City employed Plaintiff, an African American male, as a deputy-police chief during the period relevant to this lawsuit. *See* FIRST AMENDED COMPLAINT (Doc. 3 at 2). During his employment, Plaintiff claims to have been outspoken about the "inadequacy of the [police department's] budget." *Id.* at 4. Plaintiff asserts that because of this "whistleblowing" or

---

[1] *See* DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS; AND COUNTER-MOTION FOR SANCTION'S [sic] AND ATTORNEY'S FEES [DOC. 44 & 48] (Doc. 52); DEFENDANTS' RESPONSE TO PLAINTIFF'S COUNTER-MOTION FOR SANCTION'S [sic] AND ATTORNEY'S FEES [DOC.48] (Doc. 53); PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S COUNTER-MOTION FOR SANCTIONS AND ATTORNEY'S FEES (Doc. 61); PLAINTIFF'S SURREPLY TO DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS (Doc. 67).

alternatively, because of his race, Defendants denied him advancement to positions he was qualified to hold. *Id.*

Meanwhile, the Motion for sanctions arose out of Plaintiff's contact with Mr. Vincent Howell, a former City of Las Vegas Council member. Mr. Howell's term on the City Council ended on March 31, 2020. *See* AFFIDAVIT OF VINCENT HOWELL (signed May 13, 2020) (Doc. 44 at 31). In addition to his work as a City Councilor, Mr. Howell managed (and continues to manage) a convenience store in Las Vegas. *Id.* During the first week of April 2020, Plaintiff entered that convenience store and told Mr. Howell that his attorney wished to talk to Mr. Howell about a conversation Mr. Howell had with Defendant Gurule-Giron. *Id.* at 31–32. Mr. Howell had previously informed Plaintiff about the conversation in question shortly after it occurred in 2018. *Id.* at 32. On Plaintiff's request, Mr. Howell provided Plaintiff his phone number, so that Plaintiff's counsel could contact him. *Id.*

A day or two later, Plaintiff's counsel called Mr. Howell. While on the phone, Mr. Howell described the 2018 conversation he had with Defendant Gurule-Giron. *Id.* Plaintiff's counsel asked if Mr. Howell would sign an affidavit, and Mr. Howell agreed. *Id.* Plaintiff's counsel then prepared an affidavit, which Mr. Howell signed. *Id.*

> That affidavit, prepared by Plaintiff's counsel and signed by Mr. Howell, reads:
>
> When City of Las Vegas Chief of Police Juan Montano resigned from his position in the fall of 2018, and a successor needed to be appointed by Mayor Tonita Gurule-Giron, I [referring to Mr. Howell] felt that the natural and most qualified successor to Chief Montano was then Deputy Police Chief Kenneth Jenkins.
>
> Accordingly, during a conversation I had with Mayor Gurule-Giron in the main lobby of the Las Vegas City Hall after a meeting of the City Council, I asked Mayor Gurule-Giron who was she going to appoint to replace Chief Montano, and I said to her, "What about Ken [Mr. Jenkins]?"
>
> Mayor Gurule-Giron responded to my question by saying, **"I'm not going to promote that monkey."**

2

When I asked her, "Then who?," she said, "I don't know, but not him."

AFFIDAVIT OF VINCENT HOWELL (signed April 7, 2020) (Doc. 44 at 37) (emphasis in original).

Defendants now seek to exclude Mr. Howell's statements from trial on the ground that Plaintiff's counsel had inappropriate contact with a "party to this litigation" who is "represented by counsel." Doc. 44 at 1. On the other side, Plaintiff seeks sanctions and attorney's fees because of Defendant's "spurious Motion." Doc. 48 at 10.

## DISCUSSION

1. Defendants' Motion for Sanctions (Doc. 44)

Defendants ask the Court to exercise its inherent authority to sanction Plaintiff by prohibiting him from calling Mr. Howell as a witness at trial and excluding Mr. Howell's statement in its entirety during discovery and trial. *See* Doc. 44 at 25. The Court will not do so.

Defendants are correct that the Court possesses the inherent powers to "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). But "[a] court's inherent powers must be exercised with restraint and discretion because 'of their very potency.'" *Todd v. Montoya*, No. CV 10-0106 JB/WPL, 2011 WL 13244923, at *9 (D.N.M. Jan. 12, 2011) (quoting *Chambers*, 501 U.S. at 44).

Under New Mexico Rule of Professional Conduct 16-402,

> [i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order. Except for persons having a managerial responsibility on behalf of the organization, an attorney is not prohibited from communicating directly with employees of a corporation, partnership or other entity about the subject matter of the representation even though the corporation, partnership or entity itself is represented by counsel.

3

Rule 16-402 (NMRA).

Because "[t]he New Mexico Rules were patterned after the ABA Model Rules of Professional Conduct," *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994), the Court considers the ABA Model Rules persuasive authority. The analogous ABA Model Rule is Rule 4.2, which provides:

> [i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Model Rules of Prof'l. Conduct R. 4.2 (2013).

Also relevant to the resolution of this Motion is Comment 7 to New Mexico Rule of Professional Conduct 16-402. Comment 7 states:

> [i]n the case of a represented organization, this rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. *Consent of the organization's lawyer is not required for communication with a former constituent*.

Rule 16-402 (NMRA) (emphasis added). The language of ABA Model Rule 4.2, comment 7 is materially similar.

Defendants contend that Mr. Howell is a "party" to the lawsuit, because he was a City Councilor at the time of the underlying action. Moreover, Defendants claim that as a City Council member, Mr. Howell had managerial authority and thus falls squarely within the parameters of Rule 16-402. *See* Rule 16-402 (explaining that lawyers are prohibited from communicating directly with "persons having managerial responsibility of behalf of the organization"). Accordingly, Defendants assert that "there is simply no logical or appropriate

4

basis for Plaintiff or his counsel to have contacted Mr. Howell without first obtaining defense counsel's permission, given the underlying claims in this case." Doc. 44 at 15.[2]

In support of that argument, Defendants provide the Court with several expansive views of what constitutes a "party" to a lawsuit. *See id.* at 13–14. The Court has identified the case upon which Defendants primarily rely, *Monceret v. Bd. of Prof'l Responsibility*, 29 S.W.3d 455, 460 (Tenn. 2000).[3] There, the Supreme Court of Tennessee held that "an attorney may not communicate or cause another to communicate on the subject of representation with a witness the attorney knows to be represented by counsel." *Id.* That holding does little to help the Court resolve this Motion. But in reaching that conclusion, the court explained that "a large majority of courts" and the ABA have endorsed a broad view of who constitutes a "party." *Id.* at 460. The Tennessee Court relied on *In re Illuzzi*, 616 A.2d 233, 236 (V.T. 1992), where the Supreme Court of Vermont interpreted the scope of DR 7-104, an analogous rule to NMRA 16-402. *In re Illuzzi* concluded that the rule prohibited the respondent from having contact with insurance companies *whose interests were opposed* to the interests of respondent's clients, although the insurance companies were not named parties to the lawsuit. *Id.* Notably, similar opposing interests do not appear present between Mr. Howell and Plaintiff.

Moreover, the ABA issued a formal opinion in which it observed that interests of "protecting the client-lawyer relationship from interference by [adverse] counsel, and protecting clients from disclosing privileged information that might harm their interests, are not limited to

---

[2] Curiously, the Motion contains no affirmative statement that defense counsel does in fact represent Mr. Howell. The argument appears to be that because defense counsel represents the City of Las Vegas, counsel must also represent Mr. Howell as a former City Council member.

[3] The Court is frustrated with Defendants' use of quotes without properly attributing those quotes to any authority. *See* Doc. 44 at 13–14. Our local rules require citations to authority in support of legal positions. D.N.M.LR-Civ. 7.3(a). It is not the Court's responsibility to do the work of defense counsel. Defense counsel is cautioned that compliance with our local rules is mandatory and failure to follow the local rules can result in sanctions. *See Mendez v. Brown*, 12 F. App'x 784, 786 (10th Cir. 2001) (explaining that the district court has discretion to sanction parties for failure to comply with the local rules).

circumstances where the represented person is a party to an adjudicative or other formal proceeding." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 95-396 (1995). That said, the ABA opinion further explained,

> [w]hen a corporation or other organization is known to be represented with respect to a particular matter, the bar applies only to communications with those employees who have managerial responsibility, those whose act or omission may be imputed to the organization, and those whose statements may constitute admissions by the organization with respect to the matter in question. Thus, a lawyer representing the organization cannot insulate all employees from contacts with opposing lawyers by asserting a blanket representation of the organization.

*Id.*

Strikingly absent from that ABA opinion, however, is any mention of how counsel should approach individuals who *formerly* had managerial authority at an organization. That question was addressed a 1991 formal opinion by the ABA. *See* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 91-359 (1991). There, the ABA answered "whether a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without the consent of the corporation's lawyer, communicate about the subject of the representation with the unrepresented former employee of the corporate party." *Id*. The Committee concluded that "a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented *former* employee of the corporate party without the consent of the corporation's lawyer." *Id.* (emphasis added). In reaching that conclusion, the Committee rejected the argument that lawyers should obtain opposing counsel's consent before having contact with "highly placed" former employees, "such as a former officer or director." *Id.* The Committee explained that neither the text of the rule nor the comment provided support for such coverage. *Id.*

The same is true of New Mexico Rule of Professional Conduct 16-402. As previously noted, comment 7 expressly provides that "[c]onsent of the organization's lawyer is not required for communication with a former constituent." Rule 16-402 (NMRA), cmt. 7. The scope of the New Mexico rule thus mirrors that of Model Rule 4.2. In accordance with the ABA's interpretation of Model Rule 4.2, the Court finds no basis for limiting a lawyer's contact with a former employee—regardless of that employee's position in the organization—in the text of the rule or comment. Thus, Mr. Howell is not a party to this action, and Plaintiff's counsel was free to contact him without first seeking the permission of defense counsel.

Because Plaintiff's counsel has not violated the New Mexico Rules of Professional Conduct, the Court will not exercise its inherent authority to impose sanctions on Plaintiff. *Cf. Rogler v. Standard Ins. Co.*, 30 F. App'x 909, 914 (10th Cir. 2002) (concluding that the district court did not abuse its discretion in denying a request that it exercise its inherent power to sanction the other party when the district court did not find that the other party acted improperly during the litigation).

  2. Plaintiff's Response to Defendants' Motion for Sanctions; and Counter-Motion for Sanctions and Attorney's Fees (Doc. 48)

The Court will deny Plaintiff's Counter Motion for failure to comply with Federal Rule of Civil Procedure 11. *See* Doc. 61 at 2 (confirming that Plaintiff seeks sanctions and attorney's fees under Rule 11). Plaintiff failed to comply with the requirements of Rule 11 in two important respects. First, Rule 11 instructs that "[a] motion for sanctions must be made separately from any other motion[.]" Fed. R. Civ. P. 11(c)(2). Thus, Plaintiff improperly joined his response brief and Counter-Motion in violation of Rule 11. Plaintiff's statement in his Counter-Motion that his "request for sanctions is now 'made separately' as ordered by the Court," Doc. 61 at 4, does not satisfy the requirements that the motion *actually be made separately* and mischaracterizes the

7

Court's June 22, 2020, ORDER (Doc. 51).[4] Second, "the 'safe-harbor' provision of Rule 11(c)(2) requires a party to serve a copy of its Rule 11 motion on the other party and to give that party an opportunity (generally 21 days) to withdraw or correct the challenged document before filing the sanctions motion with the court." *Mellott v. MSN Commc'ns, Inc.*, 492 F. App'x 887, 888 (10th Cir. 2012). But Plaintiff did not comply with the safe-harbor provision.[5] Overlooking Plaintiff's failure to comply with the safe harbor provision of Rule 11 would be an abuse of discretion. *See Roth v. Green*, 466 F.3d 1179, 1191–92 (10th Cir. 2006). Thus, the Court will not do so.

CONCLUSION

IT IS THEREFORE ORDERED THAT

(1) DEFENDANTS' MOTION FOR SANCTIONS (Doc. 44) is DENIED; and

(2) PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SANCTIONS; AND COUNTER-MOTION FOR SANCTIONS AND ATTORNEY'S FEES (Doc. 48) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] In that Order, the Court permitted Defendants to file separate briefs addressing Defendants' Motion and Plaintiff's Counter-Motion. Doc. 51 at 1. The Court made no reference to "convert[ing] Plaintiff's request [for sanctions] into a separate Motion for Sanctions," despite Plaintiff's assertion that it had. Doc. 61 at 5. Plaintiff is cautioned not to improperly attribute statements to the Court.

[5] Plaintiff states that he "complied with the rule sufficiently" for the Court to grant his Counter-Motion. Doc. 61 at 5. He makes no mention of the 21-day safe harbor provision *with respect to his Counter-Motion—*indeed, his only mention of it is in the context of Defendants' Motion, which was not pursued under Rule 11. That said, the Court observes that Plaintiff could not have complied with the 21-day safe harbor provision because his Counter-Motion was filed a mere ten days after Defendants' Motion, which is the basis for Plaintiff's request for Rule 11 sanctions.

8